UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHANI SCHEFF, *individually and as a Parent and Natural Guardian of A.S.*,

Plaintiff,

-v-

NEW YORK CITY DEPARTMENT OF EDUCATION, *and* DAVID C. BANKS, *in his official capacity as Chancellor of New York City Department of Education*,

Defendant.

---

22 Civ. 7579 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision addresses both the retrospective and prospective educational placement of A.S., age five, under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, and regulations promulgated thereunder, and New York Education Law § 4404(4)(a). Plaintiff Chani Scheff ("Scheff"), as A.S.'s parent and guardian, moves for summary judgment. Scheff seeks a retrospective order providing that A.S. was entitled under the IDEA to attend a private school, the International Academy for the Brain ("iBRAIN"), for the 2022–2023 school year during the pendency of administrative and judicial proceedings regarding the adequacy of A.S.'s education (the "IEP proceeding"). The order Scheff seeks would thus reverse the State Review Officer's ("SRO") contrary decision. The order would also have prospective impact: it would direct the New York City Department of Education and its chancellor, David C. Banks (collectively, "the City"), to fund A.S.'s parent-directed placement at

iBRAIN for the upcoming 2023–2024 school year ("SY") while her IEP proceeding is pending.[1]

Dkt. 30 ("AC") ¶¶ 17–96. The City opposes the motion and cross moves for summary judgment.

It counters that pendency lies in the general program outlined in A.S.'s latest Individualized

Education Program ("IEP"), that Scheff has not sought a public placement recommendation

pursuant to that IEP, and that this litigation is an attempt to avoid the state due process complaint

process, in contravention of Second Circuit precedent. The City seeks an order affirming the

SRO decision.

    For the foregoing reasons, the Court denies Scheff's motion for summary judgment in its

entirety, and grants the City's cross-motion for summary judgment.

## I.    Background

### A.    Factual Background[2]

---

[1] Although this fact is immaterial to this decision, the Court notes—as the Second Circuit and other judges in this District have noted in like cases—that this case, on behalf of a student with disabilities, was brought by the Brain Injury Rights Group, Ltd. ("BIRG"). BIRG's founder also founded iBRAIN and has brought numerous cases on behalf of students seeking public funding for students at iBRAIN. *See, e.g., Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 528–29 (2d Cir. 2020) (noting "unusual set of facts" in cases brought by BIRG on behalf of students at iBRAIN); *de Paulino v. N.Y.C. Dep't of Educ.*, No. 22 Civ. 1865 (PAE), 2023 WL 1433665, at *1 n.1 (S.D.N.Y. Feb. 1, 2023) (same); *Ferreira v. N.Y.C. Dep't of Educ.*, Nos. 19 Civ. 2937 (JMF), 19 Civ. 8519 (JMF), 2020 WL 1158532, at *2 n.1 (S.D.N.Y. Mar. 6, 2020) (describing circumstances giving rise to certain cases brought by BIRG as "curious," though "ultimately irrelevant" to court's decision).

[2] The Court's account of the underlying facts of this case is drawn from the parties' submissions in support of and in opposition to Scheff's summary judgment motion and the City's cross-motion for summary judgment—specifically, the redacted certified administrative record, Dkt. 56 ("CAR"), Scheff's Local Rule 56.1 statement of material facts, Dkt. 42 ("Scheff 56.1"); the City's Local Rule 56.1 counterstatement, Dkt. 46 ("City Counter 56.1"), and additional statement of material facts, Dkt. 47 ("City 56.1"); Scheff's Local Rule 56.1 counterstatement of material facts, Dkt. 52 ("Scheff Counter 56.1"); the Impartial Hearing Officer decision, Dkt. 17-1 ("IHO decision"); and the State Review Officer's decision, Dkt. 55 ("SRO decision"). Although the parties did not file a joint statement of agreed-upon facts, many of the relevant facts are

1.      **A.S.'s Placement**

A.S. is a five-year-old girl who suffers from a brain injury and has been diagnosed with a seizure disorder and apraxia of speech.  City Counter 56.1 ¶ 2.  A.S. is ambulatory with moderate help, but often uses an assistive device with adult guidance for mobility.  *Id.* ¶ 3.

Between July 2020 through February 2021, A.S. attended Stepping Stone, an approved special preschool in Queens, New York, pursuant to an IEP dated December 14, 2020 (the "December 2020 IEP").  Scheff Counter 56.1 ¶¶ 2–3.  The December 2020 IEP recommended A.S. for a 12:1:2 special class with related services—namely, individual speech-language, occupational, and physical therapy sessions, each three times weekly.  *Id.* ¶ 3.  The December 2020 IEP also recommended a 1:1 paraprofessional and an Augmentative and Alternative Communication device to support A.S.  *Id.* ¶ 4.

On December 16, 2021, the City determined at its annual IEP meeting that A.S. did not require a change to her special education services.  It recommended a 12-month program in a 12:1:2 special class with the same related services in frequency and substance (the "December 2021 IEP").  *Id.* ¶ 5.  The City recommended Stepping Stone as the location at which A.S. would receive the services outlined in the December 2021 IEP.  *Id.* ¶ 6; *see also* City Counter 56.1 ¶ 11.

---

undisputed here.  Unless otherwise noted, the Court's citations to the parties' respective counterstatements refers to facts admitted therein.

Citations to a party's 56.1 Statement incorporate by reference the documents cited therein. Where facts stated in a party's 56.1 Statement are supported by testimonial or documentary evidence, and denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts to be true.  *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

A.S. is an extended school year student, meaning her school year ends on June 30.  City Counter 56.1 ¶ 25; CAR at 20, 55, 144, 199–200.

In February 2022, A.S. turned five, meaning she would not be eligible to attend Stepping Stone the following school year: 2022–2023.  City Counter 56.1 ¶ 12.  On February 25, 2022, Scheff notified the City that she intended to "unilaterally place A.S. at iBRAIN for the remainder of the 2021–2022 SY through a Ten-Day Notice."  *Id.* ¶ 13.  At iBRAIN, A.S. was placed in an 8:1:1 special class, received longer therapy sessions, and had a 1:1 paraprofessional and 1:1 nurse through the school day.  *Id.* ¶¶ 14–15.

On March 9, 2022, the City responded to Scheff's Ten Day Notice, stating that there were no recommended changes to the December 2021 IEP.  Scheff Counter 56.1 ¶ 8.  A.S. continued to attend iBRAIN for the remainder of the 2021–2022 SY.  City Counter 56.1 ¶ 19.

On May 24, 2022, the City reconvened an IEP meeting to formulate a new IEP for A.S. for the 2022–2023 SY.  Scheff Counter 56.1 ¶ 9.  On June 17, 2022, the City sent a Prior Written Notice and School Location letter notifying Scheff that A.S. was recommended to attend the Hale Woodruff School, P.S. 224, for the 2022–2023 SY.  *Id.* ¶ 10; *see also* City Counter 56.1 ¶ 24.  When Scheff called the school to request more information, she was told that it was not wheelchair accessible.  *But see* City Counter 56.1 ¶ 23 (disputing this fact on ground that the City lacks independent knowledge whether it is true).  The same day, Scheff notified the City through a Ten Day Notice that she disagreed with the proposed placement at P.S. 224, and that she intended to again place A.S. unilaterally at iBRAIN for the 2022–2023 SY.  *Id.* ¶¶ 21, 24.

On July 14, 2022, after the start of the extended school year, the City sent another School Location Letter for a different school, 75K004@19S060 ("75K004").  *Id.* ¶ 25.  When Scheff called 75K004 to request more information, she was told that it could not guarantee that A.S.

would receive the extended, 60-minute related service sessions that she did at iBRAIN. *Id.* ¶ 26 (disputing this fact on ground that the City lacks independent knowledge whether it is true).

### 2.    The Due Process Complaint and State Administrative Proceedings

On August 4, 2022, after the 2022–2023 SY had begun, Scheff initiated the IEP proceeding by filing a due process complaint alleging that the City had failed to provide A.S. a free appropriate public education ("FAPE") for the 2021–2022 and 2022–2023 SYs and to recommend a school that could implement the proposed May 2022 IEP. Scheff Counter 56.1 ¶ 13; City Counter 56.1 ¶ 27. The DPC listed P.S. 224 and 75K004 as the schools that had been recommended, and included the information Scheff claimed to have received from them when she called. City Counter 56.1 ¶ 28. Scheff also requested a pendency determination for the 2022–2023 SY, *id.* ¶ 29, seeking continuation of services for A.S. at iBRAIN, *see* CAR at 20.

On August 30, 2022, after reviewing A.S.'s December 2020 IEP, quarterly reports from Stepping Stone, and a final notice of recommendation of Stepping Stone as a 12-month placement, City Counter 56.1 ¶ 31, an Impartial Hearing Officer ("IHO") issued an administrative decision that iBRAIN was A.S.'s operative pendency placement, Scheff Counter 56.1 ¶ 14; *see also* Dkt. 17-1 ("IHO Decision"). The IHO reasoned that, because Stepping Stone was no longer available and the December 2020 IEP had not specified a brick-and-mortar location or provided "enough guidance to base pendency solely on [it]," "it [was] proper to base pendency on the operative placement in effect when the due process complaint was filed on August 4, 2022"—that is, iBRAIN. CAR at 25–26. The IHO decision also ordered the City to pay A.S.'s tuition at iBRAIN "commencing within 30 calendar days of the date of this order until the resolution of this Due Process Complaint." *Id.* at 29.

On September 6, 2022, the City served a Notice of Intent to appeal the IHO decision.[3]
*See* CAR at 32. Scheff filed the Complaint in the instant action and sought emergency relief
from this Court the same day. Dkts. 1, 4.

On November 10, 2022, while this case was pending, the SRO issued the pendency
decision. Scheff Counter 56.1 ¶ 23; *see* SRO decision. The SRO held that the IHO had erred in
relying on an "operative placement" analysis and vacated the decision. SRO Decision at 7–8.
The SRO determined that A.S., in fact, had a previously implemented and agreed-upon IEP: the
December 2020 IEP, which provided for the same special class placement that had been in place
for the 2020–2021 SY, and to which Scheff had not objected. *Id.* at 8. The SRO rejected
Scheff's argument that the City had refused or failed to provide a brick-and-mortar placement at
which to implement the December 2020 IEP; rather, after reviewing the record, the SRO
determined Scheff had never requested a public pendency placement—and, to the contrary, had
repeatedly informed the City of her desire for A.S. to remain at iBRAIN—such that the City was
not obligated to provide a specific recommended placement location. *Id.* at 9–11. In the event
that Scheff requested such a placement, however, the SRO stated, the City would have to provide
one pursuant to the December 2020 IEP. *Id.* at 11.

Scheff's IEP proceeding as to the adequacy of the educational programs the City
provided for the 2021–2022 and 2022–2023 SYs is still pending.

**B.      This Case's Procedural History**

---

[3] The City states that it filed the Notice of Intent to Appeal on September 6, 2022. City 56.1
¶ 15. Scheff disputes this, arguing that the Notice's internal September 1, 2022 date "clearly
states" when it was filed. Scheff Counter 56.1 ¶ 15. In this litigation, the City has consistently
represented that it filed its Notice of Intent to appeal on September 6, 2022, Dkt. 18. Before the
instant motion, Scheff has not objected to that representation.

On September 6, 2022, Scheff filed the complaint. Dkt. 1. The next day, Scheff moved for a temporary restraining order directing the City to fund A.S.'s placement at iBRAIN for the 2022–2023 SY, Dkt. 4, and filed a memorandum of law in support, Dkt. 5. The Court—which was under the incorrect impression, based on Scheff's written submissions so indicating, that A.S.'s access to education was at risk, Dkt. 10—that day scheduled an emergency conference for the following day, Dkt. 7. On September 8, 2022, the Court held the emergency conference. Dkt. 10. Upon establishing through colloquy with counsel that A.S.'s education was not, in fact, at imminent risk, the Court scheduled a show-cause hearing and set a briefing deadline. *Id.*

On September 19, 2022, the City opposed the entry of a temporary restraining order. Dkt. 12. On September 23, 2022, Scheff replied. Dkt. 13. On September 30, 2022, the Court held a conference, at which it directed that the factual record and briefing, which the Court found inadequate in various respects, be amplified. On October 1, 2022, heeding the Court's direction, Scheff filed the IHO decision. Dkt. 17-1. On October 3, 2022, the City filed a letter brief explaining the basis for its position that, in light of the pending appeal, the IHO decision that it had appealed was not binding, Dkt. 18. The same day, Scheff responded. Dkt. 19. Later that day, the Court held a second conference at which, in a bench ruling, it denied Scheff's bid for preliminary injunctive relief. *See* Dkt. 21. On October 11, 2022, Scheff appealed that decision, Dkt. 22, and on October 13, 2022, moved for an expedited briefing schedule and an injunction pending appeal, *see Scheff v. Banks*, No. 22-2439 (2d Cir.), docket 5. On November 10, 2022, the SRO reversed and vacated the IHO decision. *See, e.g.*, Dkts. 25, 55.

On December 1, 2022, the City notified the Court of the SRO's reversal of the IHO decision. Dkt. 25. On January 10, 2023, at the Court's suggestion, Dkt. 28, Scheff filed an amended complaint, *see* Dkt. 30. The AC added allegations as to the SRO decision. AC ¶¶ 45–

82. The AC sought reversal of the SRO's decision and orders from this Court (1) naming

iBRAIN as A.S.'s pendency placement for the 2022–2023 SY, *id.* ¶ 96, and (2) directing the City

to fund that placement, *id.* ¶ 90.

Also on January 10, 2023, the Second Circuit denied Scheff's interlocutory appeal insofar

as she sought an injunction pending appeal under 20 U.S.C. §1415(j) or the traditional injunction

standards.  Dkt. 31.

On February 7, 2023, the City answered the AC.  Dkt. 35 ("Answer").  On March 3,

2023, the Court held a conference and set a briefing schedule.  Dkt. 40.  On March 31, 2023,

Scheff filed the certified administrative record under seal.  Dkt. 41.  On April 14, 2023, Scheff

moved for summary judgment, Dkt. 43, and filed a memorandum of law, Dkt. 44 ("Scheff

Mem."), and Rule 56.1 statement, Dkt. 42, in support.  On April 28, 2023, the City cross-moved

for summary judgment and opposed Scheff's motion for summary judgment, Dkt. 45, and filed a

memorandum of law, Dkt. 48 ("City Mem."), a counter Rule 56.1 statement, Dkt. 46, and a Rule

56.1 statement, Dkt. 47, in support.  On May 12, 2023, Scheff replied in support of her motion

and in opposition to the City's cross-motion, Dkt. 51 ("Scheff Opp."), and filed a counter Rule

56.1 statement, Dkt. 52.  On May 26, 2023, the City replied in support of its cross-motion.  Dkt.

53 ("City Reply").  On June 20, 2023, the City filed an unsealed copy of the SRO decision.  Dkt.

55.  On June 23, 2023, it filed a redacted version of the certified administrative record.  Dkt. 56.[4]

## II.    Applicable Legal Standards

"The IDEA authorizes the disbursement of federal funds to [s]tates that develop

appropriate plans to, among other things, provide a free and appropriate public education

("FAPE") to children with disabilities." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d

---

[4] The Court cites to the Bates-stamped page numbers at the bottom of the pages in the CAR.

519, 525 (2d Cir. 2020) (footnotes omitted). "To provide a FAPE to each student with a disability, a school district must develop an IEP [individualized education program] that is 'reasonably calculated to enable the child to receive educational benefits.'" *Id.* (quoting *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014)). Parents who wish to challenge the adequacy of their child's IEP can avail themselves of New York's two-tier system of administrative review: first, by filing an administrative due process complaint and requesting a hearing before an IHO; and second, by appealing that officer's decision to a state review officer. *Id.* at 526; *see also* 20 U.S.C. § 1415(f)–(g); N.Y. Educ. Law § 4404(1)–(2).

The IDEA permits dissatisfied parents to pursue judicial review of the SRO's decision in, *inter alia*, a federal district court. *Ventura*, 959 F.3d at 526; *see also* 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3). The district court receives the records of the state administrative proceedings and hears additional evidence if requested. 20 U.S.C. § 1415(i)(2)(C)(i)–(ii). "[B]asing its decision on the preponderance of the evidence," the district court "shall grant such relief as [it] determines is appropriate." *Id.* § 1415(i)(2)(C)(iii); *see T.M. ex rel. A.M.*, 752 F.3d at 152. In conducting such an independent review, district courts "must give due weight to [the state administrative] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012) (internal alterations and quotation marks omitted). Where an IHO and SRO reach conflicting conclusions, "a court must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead." *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021) (internal quotation marks omitted). "On 'issues of law,' however, 'such as the proper

interpretation of the federal statute and its requirements,' courts do not owe deference to state hearing officers." *Id.* (quoting *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005)).

Under the pendency, or "stay-put," provision of the IDEA, a child protected by the IDEA is to remain, at public expense, in his or her "then-current educational placement" during the adjudication of proceedings conducted pursuant to the IDEA. 20 U.S.C. § 1415(j); *see Ventura*, 959 F.3d at 526, 532. An action, like this one, that alleges a violation of the pendency provision falls under one of the exceptions to the IDEA's requirement for the exhaustion of administrative remedies before filing suit in federal court. *See Ventura*, 959 F.3d at 531. "[W]here the IDEA's stay-put provision is implicated, the provision triggers the applicability of an automatic injunction designed to maintain the child's educational status quo while the parties' IEP dispute is being resolved." *Id.* at 529 (citing cases); *see de Paulino v. N.Y.C. Dep't of Educ.*, No. 22 Civ. 1865 (PAE), 2023 WL 1433665, at *4 (S.D.N.Y. Feb. 1, 2023).

## III.    Discussion

The pending motion raises—as the parties have agreed, including at the March 2, 2023 conference—two issues. The first is retrospective: Was A.S.'s pendency placement for the 2022–2023 SY at iBRAIN under the operative placement doctrine? The second, which turns on resolution of the first, is prospective: What is A.S.'s placement for the 2023–2024 SY? The Court addresses these issues in turn.

### A.    A.S.'s Pendency Placement During the 2022–2023 SY

The Court begins by considering A.S.'s "then-current educational placement" at the time the IEP proceeding began, on August 4, 2022. Scheff argues that, because A.S. had aged out of

Stepping Stone and because Scheff had rejected the City's recommended placement at P.S. 224, the City effectively did not provide a pendency placement. Scheff Mem. at 8–12. Therefore, Scheff claims, the "operative placement" doctrine—which "has its origin in cases . . . where there is no previously implemented IEP," and looks to the child's "operative placement" at the time the IEP proceeding was initiated, *Ventura*, 959 F.3d at 536—applies. And, she argues, because A.S. was enrolled at iBRAIN in August 2022, iBRAIN is her "then-current educational placement." Scheff's argument tracks that of the IHO decision overturned by the SRO. The City counters that pendency lies with the December 2020 IEP. It argues that Scheff's choice to place A.S. at iBRAIN unilaterally, rather than to pursue public placement, did not trigger the operative placement doctrine; and that the Second Circuit's decision in *Ventura, supra*, forecloses Scheff's argument here. *See* City Mem. at 11–17. The City's argument tracks the thorough and well-reasoned SRO decision. The City is correct, as was the SRO.[5]

### 1.    A.S.'s Then-Current Educational Placement

---

[5] The parties dispute the degree of deference to which the SRO decision is entitled. To the extent that this decision entails interpreting the meaning of "then-current" and "placement" under the relevant statutes, the Court does not defer to the SRO decision on these pure questions of law. *See Hidalgo v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 2590 (RA), 2019 WL 5558333, at *3 (S.D.N.Y. Oct. 29, 2019); *L.L. v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 4146 (JPO), 2016 WL 4535037, at *7 n.4 (S.D.N.Y. Aug. 30, 2016) (same). Assessed *de novo*, however, the SRO was correct that, under the law, A.S.'s "then-current placement" was the general program agreed upon in the December 2020 IEP. *See, e.g., L.L.*, 2016 WL 4535037, at *7 n.4 (same). To the extent that the SRO decision implicates pure questions of fact or educational policy, the Court reviews it with the typical deference accorded to thorough and well-reasoned SRO decisions, while basing its decision on the preponderance of the evidence in the record. *See A.C. ex rel. M.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009) (deference to SRO particularly warranted where decision based on administrative record); *see, e.g., L.L.*, 2016 WL 4535037, at *5 (with conflicting pendency placement decisions: "[W]here the decisions of an IHO and a SRO conflict, the Court should generally defer to the SRO's decision as the final decision of the state authorities.").

Under the IDEA's stay-put provision, "[t]he term '*then-current* educational placement' typically refers to the child's last agreed-upon educational program before the parent requested a due process hearing to challenge the child's IEP." *Ventura*, 959 F.3d at 532 (emphasis in original). In determining a child's "then-current educational placement," the Second Circuit directs courts to consider: (1) "the placement described in the child's most recently implemented IEP; (2) the operative placement actually functioning at the time when the stay put provision of the IDEA was invoked; or (3) the placement at the time of the previously implemented IEP." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015) (internal quotation marks omitted). "Educational placement," however, "refers to the general educational program—such as the classes, individualized attention and additional services a child will receive—rather than the 'bricks and mortar' of the specific school." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009).

Here, the first option identified by the Circuit—that is, "the placement described in the child's most recently implemented IEP"—supplies A.S.'s then-current educational placement. At the time the DPC was filed, A.S.'s most recent agreed-upon and implemented IEP was the December 2020 IEP. It provided for 12:1:2 special class placement, with a 1:1 paraprofessional and Augmentative and Alternative Communication device, and individual therapy services. Scheff Counter 56.1 ¶¶ 3–4; *see id.* ¶ 5 (December 2021 IEP identical). The December 2020 IEP did not have to specify a brick-and-mortar location to constitute A.S.'s then-current educational placement. *See T.Y.*, 584 F.3d at 419 ("[T]he requirement that an IEP specify the 'location' does not mean that the IEP must specify a specific school site."). Rather, "[t]he relevant 'placement' has been interpreted to mean the 'same general level and type of services . . . [or] 'type of educational program' described in the last IEP, not the right to placement at a particular school."

*L.L.*, 2016 WL 4535037, at *7 (quoting *T.M. ex rel. A.M.*, 752 F.3d at 171); *see Melendez v. N.Y.C. Dep't of Educ.*, 420 F. Supp. 3d 107, 113 (S.D.N.Y. 2019) ("[T]he IDEA's pendency provision . . . only entitles the child to receive the same general type of educational program," and "[it] is up to the school district to decide how to provide that educational program, as long as the decision is made in good faith." (citations omitted)). A.S. is not guaranteed the right to remain at iBRAIN, or indeed any specific school, during pendency proceedings; "instead, [s]he is entitled to placement at an educational program at the level described in the last IEP agreed upon by the parent and the [City]"—here, the December 2020 IEP. *L.L.*, 2016 WL 4535037, at *7; *see, e.g.*, *L.B. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 9356 (MKV), 2022 WL 220085, at *3 (S.D.N.Y. Jan. 25, 2022) ("[T]hen-current educational placement" was last agreed-upon IEP; "[t]he Court cannot credit an argument that because L.B. was enrolled at Cooke before IEP proceedings were initiated, it was his 'operative placement.'"). And Scheff has not argued, let alone established, "the exceptional circumstances required to prove that the [December 2020 IEP] disserves her [child] such that it could not serve as the basis for [A.S.'s] pendency placement." *L.L.*, 2016 WL 4535037, at *8. Nor do the factual or the administrative records below, to which the Court defers on this question of fact, suggest as much. *See id.* *Contra Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 325 (S.D.N.Y. 2005) (City "arrived at the impartial hearing and promptly announced" that IEP that formed basis for pendency placement was inadequate).

Because the December 2020 IEP provides A.S.'s then-current educational placement, this case does not require an "operative placement" analysis. The term "'operative placement' has its origins in cases where the school district attempts to move the child to a new school without the parents' consent, or where," as Scheff has contended is the case here, "there is no previously

implemented IEP so that the current placement provided by the school district is considered to be the pendency placement for the purposes of the stay-put provision." *Ventura*, 959 F.3d at 536 (internal citations omitted).  Here, as in *Ventura*, neither circumstance is presented.  *Id.*

### 2.  The Implementation of A.S.'s Then-Current Educational Placement and Applicability of Footnote 65 of *Ventura*

Scheff concedes that A.S. had a last agreed-upon placement in the December 2020 IEP. *See, e.g.*, Scheff Mem. at 13.  She argues, however, that the City is obliged to fund A.S.'s placement at iBRAIN under an "exception" noted in a footnote in *Ventura*, because there "is no actual [brick-and-mortar] place for the [December 2020] IEP to be implemented," Scheff Opp. at 10–11; *see* Scheff Mem. at 3.  This argument also fails.

In *Ventura*, the Second Circuit held:

> If a parent disagrees with a school district's decision on how to provide a child's educational program, the parent has at least three options under the IDEA: (1) The parent can argue that the school district's decision unilaterally modifies the student's pendency placement and the parent could invoke the stay-put provision to prevent the school district from doing so; (2) The parent can determine that the agreed-upon educational program would be better provided somewhere else and thus seek to persuade the school district to pay for the program's new services on a pendency basis; or (3) The parent can determine that the program would be better provided somewhere else, enroll the child in a new school, and then seek retroactive reimbursement from the school district after the IEP dispute is resolved. . . .  That said, what the parent cannot do is determine that the child's pendency placement would be better provided somewhere else, enroll the child in a new school, and then invoke the stay-put provision to force the school district to pay for the new school's services on a pendency basis.

959 F.3d at 534.  Parents who take this latter course, the Circuit counseled, transfer their child to the school of their choice "at their own financial risk" for the duration of those proceedings.  *Id.* In so holding, the Circuit rejected the argument that the City was obligated to pay for iBRAIN's services because it had been the students' "operative placement" at the time their parents initiated IEP proceedings.  *Id.* at 536.  In footnote 65 of its decision, however, the Circuit

reserved the question of proper pendency placement "where the school providing the child's pendency services is no longer available *and* the school district either refuses or fails to provide pendency services to the child." *Id.* at 534 n.65 (emphasis in original).

Scheff argues the scenario described in footnote 65 is the exact one here. She notes that, in August 2022, A.S. was no longer eligible to enroll at Stepping Stone, and that she, Scheff, had rejected the City's alternative public placement recommendations. *See* Scheff Mem. at 8–12; *see also infra* note 6. But the analogy to the scenario reserved by the Circuit is not apt.

The Court begins with the public pendency placement's availability. The parties agree that when Scheff unilaterally transferred A.S. to iBRAIN in March 2022, Stepping Stone *was* still available for the remainder of the 2021–2022 SY. *See, e.g.*, CAR at 57; City Mem. at 15 ("Stepping Stone was available at the time Plaintiff moved her child to i[BRAIN] in the middle of the 2021–2022 school year."); City Counter 56.1 ¶ 12 (A.S. would be ineligible for Stepping Stone in "the *next* school year" (emphasis added)); Scheff Mem. at 1 ("In February 2022, A.S. turned five years old, making her no longer eligible to attend Stepping Stone school *the next school year*." (emphasis added)). Thus, A.S.'s age was not a present barrier to placement, but solely a prospective one, for the upcoming 2022–2023 SY. And the administrative record reflects that Scheff unilaterally transferred A.S. to iBRAIN not because Stepping Stone was unavailable, but because Scheff had become dissatisfied with Stepping Stone's services and decided, after research, that iBRAIN was a preferable placement. *See* CAR at 57 ("Parent began researching educational programs and identified iBRAIN as appropriate.").

That distinction is significant. It underscores that, contrary to her analogy to footnote 65 of *Ventura*, Scheff engaged in much the same conduct as—and her operative placement argument echoes that of—the plaintiffs in *Ventura*. Like those plaintiffs, Scheff rejected a viable

public placement, "unilaterally transfer[red her] child" to iBRAIN, and then "subsequently initiate[d] an IEP dispute to argue that the new school's services must be funded on a pendency basis." *Ventura*, 959 F.3d at 536.  To be sure, in contrast to *Ventura*, the child's former placement location became unavailable at some point after the parent's unilateral transfer, on account of the student's progression. *See id.* at 528–29, 534 n.65.  But requiring the City to fund A.S.'s placement at iBRAIN on account of pendency—where the child's present placement location is a product of a unilateral parental decision to pull the child from viable placement and into the parent's preferred future placement—would deprive the City of its rightful say in the pendency placement's implementation.  It would, just as in *Ventura*, "render[] the stay-put provision meaningless by denying any interest of [the City] in resolving how the student's agreed-upon educational program must be provided and funded." *Id.* at 536; *cf. id.* at 533 ("Underlying the Parents' primary argument is the assumption that because a school district can move a child to a new school that offers the same general level and type of services without violating the IDEA's stay-put provision, a parent is likewise authorized to invoke the stay-put provision to require the school district to pay for a new school identified by the parent so long as the new school offers substantially similar educational services. Not so."); *see, e.g.*, *Collado v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 2943 (AJN), 2020 WL 2792990, at *3 (S.D.N.Y. May 29, 2020) (rejecting, *inter alia*, argument that iBRAIN was student's "operative placement" because she was enrolled there when parent instituted administrative proceedings challenging IEP).

In any event, Scheff's bid fails for a separate reason:  She has not shown that the City failed or refused to provide pendency services to A.S. *See Ventura*, 959 F.3d at 534 n.65 (parent must show school unavailable *and* that district refused or failed to provide pendency services); *L.B.*, 2022 WL 220085, at *4 (same).  Rather, the record reflects that the City has been ready and

willing to fulfill its obligations—but that *Scheff* has not requested a public pendency placement pursuant to the December 2020 IEP.[6] Instead, Scheff repeatedly rejected public placement and placed A.S. at iBRAIN unilaterally—first, in March 2022, *see* CAR at 56; Scheff Counter 56.1 ¶ 7, when A.S. was still eligible for Stepping Stone, and again, in June 2022, for the upcoming 2022–2023 SY, Scheff Counter 56.1 ¶ 11. And since she initiated the IEP proceeding in August 2022, Scheff has not requested a public pendency placement recommendation—despite the City's repeated offers to provide one. *Compare* City Counter 56.1 ¶ 34 (in the underlying state proceedings, before the IHO, the City stated through counsel that "[i]f the [p]arent now has changed her mind and would like [the City] to provide a placement for the student pursuant to the December 2020 IEP, the [City] will do this, and we're not refusing to do that"), *and* City Reply at 4 (same), *with* City Reply at 4 ("Plaintiff [has] yet to demonstrate an interest in a public placement.").

Instead, Scheff has insisted that—because she chose unilaterally to enroll A.S. at iBRAIN prior to initiating an IEP dispute—A.S. is now legally entitled to remain at the school of Scheff's choice for the duration of the IEP proceeding, with the City footing the bill. But "it is the City,

---

[6] The City's recommended placement locations at P.S. 224 and 75K004 were made pursuant to the May 24, 2022 IEP, which Scheff resists. *See* City Counter 56.1 ¶ 24; *see, e.g.*, City Reply at 4 n.1 (presenting attending "the offered DOE placement in accordance with the IEP" as an alternative to requesting a pendency placement pursuant to the December 2020 IEP). As *Ventura* teaches, to the extent Scheff disagrees with the proposed IEP and related placements, she may: (1) argue that the school district's decision unilaterally modifies the student's pendency placement and invoke the stay-put provision to prevent the school district from doing so; (2) determine that the agreed-upon educational program would be better provided somewhere else and thus seek to persuade the school district to pay for the program's new services on a pendency basis; or (3) determine that the program would be better provided somewhere else, enroll the child in a new school, and then seek retroactive reimbursement from the school district after the IEP dispute is resolved. *Ventura*, 959 F.3d at 534. She may not, however, leverage her disagreement with the City's suggestion of P.S. 224 or 75K004 as a basis to enroll A.S. in a new school, and then invoke the stay-put provision to force the City to pay for the new school's services on a pendency basis. *Id.*

not the [p]arents, that is authorized to decide how (and where) the Student's pendency services

are to be provided." *Ventura*, 959 F.3d at 533. "To hold otherwise would turn the stay-put

provision on its head, by effectively eliminating the school district's authority to determine how

pendency services should be provided." *Id.* at 534. Scheff's choice on A.S.'s behalf not to

utilize the public pendency placement option does not mean it was not provided—nor does it

entitle her to compel the City to fund the private placement of her choosing. *Cf., e.g., Soria v.

N.Y.C. Dep't of Educ.*, 831 F. App'x 16, 18 (2d Cir. 2020) (footnote 65 of *Ventura* did not apply

where, *inter alia*, "the City did not refuse or fail to provide pendency services . . . [but] rather,

the plaintiffs unilaterally moved their children . . . to a new private school"); *Neske v. N.Y.C.

Dep't of Educ.*, 824 F. App'x 81, 82 (2d Cir. 2020) (same); *Araujo v. N.Y.C. Dep't of Educ.*, No.

20 Civ. 7032 (LGS), 2020 WL 5701828, at *4 (S.D.N.Y. Sept. 24, 2020) ("If Plaintiffs' issue is

that no timely pendency determination has been made, then they can move to obtain such relief

[in district court]. However, under *Ventura*, they may not unilaterally alter students' enrollments

and then claim pendency funding on that basis."); *Melendez v. N.Y.C. Dep't of Educ.*, No. 19

Civ. 2928 (ER), 2020 WL 4273907, at *7 (S.D.N.Y. July 24, 2020) (where, *inter alia*, plaintiff

had not shown "that [the City] refused to provide him any pendency services at all": "[I]t is up

to the school district, not the parent, to decide how to provide the most-recently-agreed-upon

educational program until the IEP dispute is resolved, so long as the decision is made in good

faith." (internal alterations omitted)); *see also Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 908

(2d Cir. 1982) (where parent enrolled child at private school, then challenged public placement

recommendation, private school was not "current educational placement" under section 1415;

"During this review of his initial placement, Zvi has a right to a place in public school, or he may

remain at [the private school his parent chose] at his parent's expense." (internal citations omitted)).

Accordingly, iBRAIN was not A.S.'s public pendency placement for the 2022–2023 SY. The Court affirms the SRO decision on that point.

**B.      The City's Obligation to Pay A.S.'s Tuition at iBRAIN for the 2022–2023 SY**

Scheff separately argues that, even if the Court affirms the SRO's decision, the IHO decision is enforceable insofar as it directed the City to fund A.S.'s placement at iBRAIN for the 2022–2023 SY while her IEP proceeding is ongoing. *See* Scheff Mem. at 12–19; Scheff Opp. at 16–17. The City counters that the IHO decision is not enforceable because it was not a final state administrative decision, and that it is not obliged to provide such payments. City Mem. at 17–20. The City, again, is correct.

Scheff first argues that "[w]hen the IHO entered an Order establishing iBRAIN as A.S.'s pendency placement, that placement essentially became 'agreed-upon,'" such that the City must fund A.S.'s placement at iBRAIN for the 2022–2023 SY. Scheff Mem. at 13. That is wrong. Only an *unappealed* IHO decision can constitute an agreement between the parties, such that it supersedes the prior pendency placement. *See Arlington Cent. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 697 (S.D.N.Y. 2006); *cf. Mendez v. Banks*, 65 F.4th 56, 59 (2d Cir. 2023) (parents can obtain funding for pendency placement "if an IRO or SRO finds it to be appropriate and issues a pendency order, *and the school district does not appeal the decision*, thereby agreeing impliedly by law to the child's educational program" (emphasis added) (internal quotation marks omitted)). Scheff made essentially the same argument earlier in this case—and the Court, at the October 3, 2022 conference, rejected it. *See* City Reply at 9 (quoting conference transcript at 24). Other courts in this District have done likewise. *See, e.g., Neske v. N.Y.C. Dep't of Educ.*, No. 20 Civ.

3912 (VEC), 2021 WL 797653, at *5 (S.D.N.Y. Feb. 25, 2021) (rejecting arguments that City obligated to fund student's placement at iBRAIN "as soon as the IHO issued his Pendency Order" and that "the fact that [the City] told Plaintiffs that it intended to appeal the Pendency Order to the State Review Officer did not mean that [it] had the right to refuse to comply with the IHO's Order"); *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 86 F. Supp. 2d 354, 362 (S.D.N.Y. 2000) ("[T]he right of parents in [Scheff's] position to reimbursement for the period during which they were in violation of § 1415(j) is not finally confirmed until they prevail on the merits in court, or the period within which to file an appeal to an SRO decision in the parents' favor expires."), *aff'd*, 297 F.3d 195 (2d Cir. 2002); *cf. Abrams v. Porter*, No. 20-3899-cv, 2021 WL 5829762, at *1–2 (2d Cir. Dec. 9, 2021) (City not obligated to make all outstanding payments allegedly due under pendency orders for the preceding school year immediately, absent showing that child's placement was at risk).

Insofar as Scheff argues that the City is obligated to pay for A.S.'s placement at iBRAIN because the City did not seek a stay of the IHO decision, that argument has also been rejected by courts in this District. *See Cohen v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 3863 (LTS) (SDA), Dkt. 42 at *8 (S.D.N.Y. Mar. 30, 2021) ("Because the DOE timely appealed the Oct. 3, 2018, IHO decision, that decision did not establish iBRAIN as [the student's] last agreed upon placement and Plaintiffs are not entitled to pendency funding at iBRAIN based on that decision."); *Neske*, 2021 WL 797653, at *5 (rejecting argument that City was obligated to pay for placement at iBRAIN, pursuant to reversed IHO decision, because it could have, but did not, seek a stay of enforcement of IHO decision). And the few cases Scheff cites in support are inapposite.[7]

---

[7] Scheff cites out-of-circuit authority, involving different state educational regimes under the IDEA, *see Mendez*, 65 F.4th at 64 (rejecting reliance on out-of-Circuit decision in IDEA fees

Finally, Scheff argues that the City is obligated to fund A.S.'s placement at iBRAIN for the 2022–2023 SY because that "is the whole point of pendency payments: [T]hey must be made while an administrative challenge is pending." Scheff Mem. at 16 (emphasis omitted). But the stay-put provision "prevents a school district from modifying a student's pendency placement without the parents' consent"—including by cutting off public funds to the agreed-upon placement. *Ventura*, 959 F.3d at 536. It does not entitle parents to a free ride at the school of their choice where there is no threat to the student's agreed-upon pendency placement. *Cf. Mendez*, 65 F.4th at 64 (the IDEA "does not create a procedural right to immediate payment, at least not absent a showing that a child's placement will be put at risk"); *Ventura*, 959 F.3d at 534 (if parent disagrees with pendency placement, she can, *inter alia*, "enroll the child in a new school, and then seek *retroactive reimbursement* from the school district after the IEP dispute is resolved"). That the City, unlike parents, cannot retroactively recoup pendency payments if it prevails on appeal does not support Scheff's claim, on these facts, to a right to enroll A.S. at iBRAIN at the City's expense. *Compare* Scheff Mem. at 16 (arguing that, because the City cannot "recoup pendency payments after winning its administrative challenge," "it must make pendency payments before it wins its challenge, including during [the City's] appeal" (emphasis

---

case), or decisions where the IHO decision was not appealed, *see* Scheff Opp. at 20 (citing *Antkowiak by Antkowiak v. Ambach*, 838 F.2d 635, 641 (2d Cir. 1988) (when the "school board chose not to appeal the hearing officer's decision . . . it became the final administrative decision of the state" (internal quotation marks omitted))). Scheff also cites *Zvi D. by Shirley D. v. Ambach* for the proposition that, were the City to cut off public funds for a child's then-current educational placement, that would amount to a unilateral change in placement. 694 F.2d at 906. But that case, when read in full, undermines Scheff's argument. The Second Circuit there affirmed that the City was *not* required to fund a child's private education, where the parent had unilaterally placed him there, pending proceedings challenging the proposed FAPE. *Id.* at 906–07 (although City is obligated to pay for a student's placement at a private school, if the child is "placed in or referred to [it] by a public agency," it is "not required to pay for the parent-initiated placement" at a private school).

omitted)), *with Ventura*, 959 F.3d at 535 ("As a practical matter, it makes sense that it is the party generally responsible for paying a student's agreed-upon educational program—here, the City—who determines how pendency services are to be provided . . . for two reasons: (i) public funding for pendency services can never be recouped; and (ii) the cost of educational services can vary dramatically.").

Accordingly, because Scheff has not shown a violation of the stay-put provision and an entitlement to a pendency order requiring the City to pay for iBRAIN's services, Scheff has not established her entitlement to retroactive reimbursement for A.S.'s expenses at iBRAIN.  This decision is without prejudice to Scheff's right to attempt to establish, in a separate proceeding applying the three-factor *Burlington-Carter* test, that the services offered by the City were inadequate or inappropriate, the services selected by the parents were appropriate, and equitable considerations support the parents' claim.  *Ventura*, 959 F.3d at 536 (same, and leaving "[t]hat question, if ever presented, . . . for another day").

### C.      The 2023–2024 SY

Finally, the Court turns to A.S.'s pendency placement for the upcoming 2023–2024 SY. At the March 2, 2023 conference, the parties agreed that, if the Court affirmed the SRO, Scheff may choose either to (1) keep A.S. enrolled at iBRAIN at her own expense; or (2) pursue public pendency programming, and ask the City for a placement pursuant to the December 2020 IEP, which the City will promptly provide.

Accordingly, the Court directs the parties to confer and to file, by June 30, 2023, a joint status update as to A.S.'s placement for the 2023–2024 SY on the docket of this case.

22

## CONCLUSION

For the foregoing reasons, the Court denies Scheff's motion for summary judgment and grants the City's cross-motion for summary judgment. The Clerk of Court is respectfully directed to terminate the motions pending at dockets 43 and 45.

It appears to the Court that this decision resolves all claims raised by Scheff in this case. For avoidance of doubt, the Court orders the parties to confirm, in the forthcoming joint status letter, due June 30, 2023, whether any outstanding issues require disposition by the Court.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: June 27, 2023
     New York, New York